Special Service, 08-30-50 Good morning, Ms. Arnhold. Good morning. May it please the Court, Your Honor, my name is Katrina Arnhold and with me is Co-Counsel Mr. Richard Casey from Sioux Falls, South Dakota. We are here representing Petitioner Patrick Martin against the US Postal Service. May I reserve three minutes of my time for rebuttal? Certainly. Thank you very much. Your Honor, we maintain that the decision below should be reversed by this Court because it lacks substantial evidence in the finding of the charge of falsification. And in the alternative, if this Court should find the falsification charge to be upheld, we argue that the Judge also abused her discretion in failing to follow Hagmeier and doing an independent analysis of the Douglas factors when eight of the nine charges against Petitioner were not upheld and were in fact dropped during the proceedings of the case before the MSPB. I thought there was one charge, unacceptable conduct, misrepresentation of physical condition, ability to work. Yes, Your Honor, thank you so much for bringing that up because that is exactly what the agency also argues. But if you look on page 65 and 66 of our appendix I'm reading that from the decision of the Administrative Judge. Yes, and that is the error that she made in not following Hagmeier. There were nine charges. If you look at the notice of proposed termination, which I don't know where it begins, but it ends on page A65 and A66, there are nine citations of violations that Mr. Martin was supposed to have made. And only on the bottom, the seventh... You must have the wrong, A65 and 66? Yes. It certainly doesn't look like... The notice is A56, is that what you're referring to? Yes, it begins and it ends on A65 to A66, where the agency cites the violations that have incurred. But those, after all those reports, are the one charge, unacceptable conduct. Yes, Your Honor, that is correct. That starts on page 56 and the entire notice ends on page A65 through 66, where the violations are cited. They are cited, there are nine violations of the Postal Service Employee Labor Relations Handbook. Yeah, these are copies of the handbook. Yes, but you see, Your Honor, on page 64, it says, your actions are in direct violation of the following provisions. And here we have nine provision sites, including the FICA claims requiring five to ten years in prison, in addition to a fine of not more than $10,000. It goes on. False statement, false claim, ethical conduct violations, not giving a full day's work, then using the Postal Service for private gain. And finally, at the bottom, unacceptable conduct. The agency uses unacceptable conduct as a rubric and a general heading in this notice, but it also cites all the other violations, including the lying on the Department of Labor form. And in its narrative, the first time this agency comes before the MSP judge in June of 2005, or in July of 2005, in their answer, they also state that there were four false CA7 claims. Those are the biweekly claims that Mr. Martin submitted to get his leave. So you're complaining about the penalty? That is in the alternative. If you find that the falsification claim is supported by substantial evidence, which we argue it is not. And the reason it is not is because we ask this Court to follow. And let me also go back and say that Mr. Martin, the full import of this case is that the agency threw the book at him. They included the indictment. They included in the narrative of their response to the judge, the MSPB judge, they included the fact that this man is going to go to jail. This section, unacceptable conduct, this is only one of the claims that they make. Your Honor, whenever an agency cites to a regulation with a specific penalty like this, five to ten years in jail and so forth, each one of those violations of the regulation carry a definition of what that charge is, and it carries its own penalty. How are you telling us that there's a lack of substantial evidence for the falsification claim? Your Honor, in Nagle v. the Department of Transportation, this Court went at length to explain that a falsification claim constitutes two necessary elements. And the first is that the employee knowingly supplies incorrect information. The second problem, which the Court never addressed below… Do you say he didn't? We will readily admit that he gave false information, but Nagle also states that a mere misstatement, in fact, let me read what Nagle says and what this Court has held, the fact of an inaccurate response cannot control the question of intent. And that leads us to the second required element under falsification, that it be done with the intent to defraud the agency or to obtain a benefit to which the employee was otherwise not entitled. Well, he was saying he couldn't work, and yet he was working in an alternative job which required use of his arms. He was videotaped doing that. So, please help me. What are you saying is failing for lack of substantial evidence here? Yes, Your Honor, he was videotaped volunteering for his son's football team and for other high school teams. But, Your Honor, Mr. Patrick never understood that volunteering was considered to be work reportable on the CA-7 form. The agency did not tell him to fill out the CA-7 form differently. It wasn't the point of volunteering, though. It was the activity that he was doing. He was signaling touchdowns and all of this physical activity which was decided, as a matter of fact, to be inconsistent with his assertion that he couldn't do physical activity in his job. Your Honor, the judge rejects the... On one occasion, he's supposed to be at work when he's doing this alternative activity. It's true, Your Honor. On October the 7th, he was actually helping with his son's football team during his duty time. But, Your Honor, those were not issues before this judge. There is no leave abuse case. There is no accusation. The agency didn't even attempt to get the leave back on that one day. And, Your Honor, let me get back to the fact that the statements, even if Mr. Let's say Mr. Martin said to the investigators, Yes, I did volunteer every day, and I did get reimbursements, and I did fill out Question 3 wrong, which is not before this court and was not before the judge. The judge said the CA-7 forms were no longer before her at all. But let's say, for our purposes of your argument, that he did admit to all this. That would still... We don't make arguments. We hear arguments. Thank you. I think you're trying to say there's no proof of intent, but didn't the administrative judge infer the intent from all the circumstances here? And isn't that entirely supportable by the facts? She may have inferred intent, and that is where the error is because the intent had to be material to a benefit received. And Mr. Martin received his benefits from the documentation that his doctor gave and his honest answers that he supplied to the doctor. Your Honor, the fact is Mr. Martin's doctor would not release him back to work, and the judge found this to be true. The agency tried to argue this in this case. The problem you have is, even adopting some of what you're saying, the AJ, I think, was very, very careful. I think she acknowledged that intent is a very high standard, but ultimately, she says, the appellant did initially deny that he was a referee coach for the football games. When confronted with taped evidence, he admitted to this action. At that point, it is clear he was trying to mislead the agency. And that's what she really derived the intent finding from. And that seems perfectly appropriate to me, does it not to you? Your Honor, the intent she derived were in two investigative interviews. They were not made in connection with his application on the claim. Mr. Ripper, in fact, signed off on all of these claims during this time himself and never advised Mr. Martin that that was wrong. Well, why would he make a representation? What would be the motivation for it? I mean, I think he acknowledges that he acknowledged that his initial denial was not correct or not true, right? He did say he was sorry to mislead, but he did not intend to deceive the agency in any fashion. And the judge below actually said on page 21, I give credence to the appellant's testimony that he did not initially consider this to be football, a real job. It was for the children. It was only on call as a substitute. And he returned the minimal amounts of compensation for his expenses. She only finds fault with the investigative interview. Your Honor, that interview that you're talking about, if I may say, came four months after his claims were already done. And the interview he had with Mr. Ripper, Your Honor, in Bradley versus the Veterans Administration, you have to be unnoticed that the questions that you give are in connection with an inquiry or an investigation. And the same thing is your Ludlam lack of candor cases. The employee has to be unnoticed, if he's going to be fired, that there is an investigation or an adjudicatory or some sort of an administrative inquiry going on. And that's another reason why we ask you to throw out the judge's opinions, because what happened in the investigative interview, you know, it should not have been taken into consideration. There is no record, there is no case before this Court where an employee was fired merely for statements made in investigatory interviews, and that is what was going on with Mr. Ripper on October the 14th. Your Honor, Mr. Ripper, it looks as if Mr. Ripper was a special injury compensation specialist, but on that day he was acting under part of the fraud unit, and he had been asked to call Mr. Martin at work, ask those questions from a written preparation by Mr. Schaubschlager, and he was acting, he said he had never done this before in the 12 years of his life, and he did not advise Mr. Martin that he was asking questions which are concerning an investigation, and in Bradley it states you must be informed that this is an investigation. This also came after the fact. Just eight days before that Ripper discussion, Mr. Ripper had advised Martin to get the doctor's notice that he could leave early. There is no question that Mr. Martin was in pain after three to six hours and that he had the doctor's. On A96 of our appendix, we cite the doctor's return to work form permitting Martin to leave early, but to get back to the fact that there is... Did the doctor know he was refereeing? He only saw the doctor once a month, and that is why... So the doctor didn't know that he was refereeing and using his arms either, did he? Your Honor... So in a sense he misled the doctor as well as the government. The agency makes that claim as well, but the judge below threw that out. On page 20, I believe it's on page A16, she states that she relies on Dr. Plagas' sworn testimony at the criminal trial. This is not a battle of medical experts. Mr. Plagas' testimony that the arm movements outside of work were not lifting, the repetitive motion and lifting. Mr. Martin was working six hours a day. He left for home only because his arm burnt as if it were on fire. The record shows and the facts below do not dispute that he could not take pain medication at work. Ms. Lozano, you wanted to say three minutes. You're well into your rebuttal time. Would you like to save it? Yes, I certainly would. Thank you so much. All right. We'll save it. Mr. Donahue. May it please the Court. To be clear, Your Honors, and I think this is clear by reading both the letter of decision, the notice of proposed removal, and the Board's decision itself, there is only one charge at issue, and that was, as the Court observed, misrepresentation of the employee's physical condition and ability to work. Now, certainly there was, over several single-spaced pages, a number of misrepresentations that were made by Mr. Martin about his physical condition and ability to work. But there was only one charge, and the Board held that charge was proven by substantial evidence. But the key to this case, at least the finding of intent, am I correct that it was with regard to his misstatements to whoever? About whether or not he even attended these games in the first instance and so forth, correct? That is correct, Your Honor. And that's a bit unusual, is it not? Simply because that's sort of, if you want to divide what's going on here, that's more in the investigatory stage as opposed to the actual conduct stage, no? Certainly, Your Honor, but as this Court has observed, the question of intent in these types of misrepresentation issues are often proven by circumstantial evidence. What happened here, Your Honor, is that the gist of plaintiff's case, this is all a big misunderstanding. I didn't know that participating in these refereeing activities somehow affected my failure to return the work and my receipt of workers' compensation benefits. If he had come clean about the fact that he had been doing it, I think this might be a different case. But instead, what he did was, when he was questioned about it, he continued to lie and mislead investigators about what he was doing, which the A.J. found, I think appropriately, spoke directly to his intent. If it was a misunderstanding, there would be no reason why he wouldn't come clean right away. But because when he was asked, he continued to cover up his activities, and as the Court noted, even was refereeing during work time when he had claimed he had to leave work early to referee because of his arm. That all goes toward the element of intent. And on that issue, the fact that he repeatedly lied, whether it be to Mr. Ripper, whether it be to the inspectors, or on the CA-7 forms, the question of intent becomes very clear when Mr. Martin has to be confronted with direct video evidence before he tells the truth. Wasn't the penalty rather severe, given the offense? I don't believe so, Your Honor. This is a situation where an employee misrepresented his physical condition and ability to work for two months. After 30 years of work and apparently giving his shoulder to the government in the process, was all of that really considered? Certainly, Your Honor, and it's noted in the letter of decision that his 27 years of service was noted. But it's also a situation, Your Honor, where we had an employee who kept out of work for a month when it was clear he could do more than he was letting on. This man had at least three surgeries on his shoulder within a year or a year and a half, correct? And certainly, Your Honor, the government sympathized with Mr. Martin, and while he was an employee there, was a good employee. But there comes a situation where an employee is willing to misrepresent himself over a two-month period, and this was noted in the letter of decision. The Postal Service simply loses faith in the employee's ability to tell the truth. And when that's the case, it not only affects the efficiency of the Postal Service's service, which is the standard on penalty, but also simply undermines any supervisor's ability to believe in the next case that Mr. Martin is going to be truthful. And I think it's significant in this case on the penalty, Your Honor, that Mr. Martin to this day has shown no remorse for his actions. He continues to contend, and this happened before the administrative judge as well, and the administrative judge noted it. He continued to make misrepresentations during the hearing, and in one instance had to be confronted with his deposition testimony to come clean. And the board noted in the testimony a number of times when Mr. Martin was less than forthcoming before the board, not only before the Postal Service. And in that case, it speaks even further to Mr. Martin's ability to tell the truth, which obviously is something that the Postal Service cares about in regards to having an employee on their roles. But again, I mean, I guess I find it a little disturbing. So now you're going back. Initially, my question was when you're using stuff that happened during the investigatory stage to sort of substantiate or make the initial charges. Now you're trying to use what he did at the AJ proceeding to justify the penalty. That seems, I mean, that's not, your answer to me before was, well, you can use the circumstantial evidence. So now you're trying to affirm and support the AJ's decision by the fact that he wasn't forthcoming at trial? Well, I think there are different inquiries, Your Honor, clearly. In terms of the penalty itself, this court has held that misrepresentation is certainly enough to warrant removal action. And certainly in this case where Mr. Martin's misrepresentations led directly to the receipt of workers' compensation benefits, to which he might not otherwise have been entitled, certainly means that this is a serious misrepresentation case, and it's one that I believe warrants removal. I think the case that Petitioner cited and noted during her argument, Bradley, illustrates precisely why this case is different from other cases in which the court has overturned a misrepresentation charge. In that case, an employee who was a veteran's employee attempted to claim relocation expenses, an additional $350 because he claimed he had immediate family. But in that case, he did not disclose the daughter for which he was seeking relocation expenses. In that case, the reason he didn't disclose the daughter is because he had two separate families. He had one that was in Mexico and he had one that was in the States. How do you disclose a daughter? What's that? How do you disclose a daughter? Meaning in the forms he was required to seek relocation expenses, he didn't disclose her on the forms. And the court held, and I think correctly in that case, that his intent, the employee's intent in that case was not to somehow divest the government of workers' compensation benefits, or in that case, relocation expenses. The intent was to hide a family member that his workmates didn't know about, and whether right or wrong, there was no intent to deceive or defraud the government. Here, there's a systematic ax by Mr. Martin that specifically showed that he knew exactly what he was doing. This is an employee who, as the court did note, has had several injuries because of his work with the Postal Service. But as a result of that, he knew exactly how the workers' compensation benefits system worked. He knew exactly what he had to say and what not to say, both to the Postal Service and to his doctor, in order to continue to stay off work. And then even when he returned to work, to be able to leave early for several days in October, even after he returned. In that case, the seriousness of the charge is such that the Postal Service has to be able to remove employees who act in that fashion, regardless of any misrepresentations he continued to make thereafter. The pure nature of the charge, the seriousness, which this court has noted is the most important element, is one in which the petitioner simply can't overcome. But you acknowledge that if you had come clean at the get-go, it would have been an entirely different case. It would have been an entirely different case on the misrepresentation charge, because the plaintiff's, the gist of the petitioner's case, that this was just a big misunderstanding, may have had more credence. If it was a big misunderstanding, then there would be no reason why he couldn't come clean right away. But because Mr. Martin knew that he had been misrepresenting his physical condition, both to the Postal Service and on the forms that he submitted, he continued to cover up those issues. And that's the circumstantial evidence on which the court found that when he made those misrepresentations, during which he was out of work, he intended to do so. And that finding is not only supported by substantial evidence, but on credibility determinations made by the administrative judge at the hearing. Simply put, the administrative judge didn't believe Mr. Martin, and had no reason not to believe the relevant Postal Service witnesses that gave testimony regarding their investigation and what Mr. Martin was doing during the month of September when he was out, and during the month of October when he was leaving early. And one other factual note I wanted to make, and then I'd be happy, Your Honor, to rest on my briefs, unless the court has any further questions. The petitioner noted that Dr. Plaga's testimony was credited by the administrative judge. That's not entirely accurate. Dr. Plaga didn't testify before the administrative judge, and it was a situation where the administrative judge certainly went over his testimony and gave some points in favor of the government and some points in favor of Mr. Martin. But certainly there were no determinations made in regard to what Dr. Plaga testified about, and certainly the administrative judge placed no weight on what Dr. Plaga did or did not testify to. The central issue, as I noted before, was whether Mr. Martin intended to misrepresent his physical condition and ability to work. And on that issue, really the most important testimony was Mr. Martin's, and the administrative judge on that front in several instances noted that Mr. Martin had been less than forthcoming, both while he was out of work, during the investigation, and also before the administrative judge herself. If there aren't any questions, I'm happy to rest my briefs. Thank you, Mr. Donohue. Mr. Arnold, Ms. Arnold has a couple of minutes left. Your Honor, we must return to the second element of the falsification claim, because this infraction, this dishonesty, the circumstances from which you can infer culpable intent, must be related to a benefit he received, and the agency no longer is claiming that there was a benefit. They dropped all of the charges of the CA-7 falsification. There is no leave abuse here. There were only three instances cited by the agency. The two investigative interviews in October and February made after the fact of Mr. Martin's honest statements to his therapist and his doctor. And also, the only thing before the judge below was whether Mr. Martin left early in the month of October claiming it was due to his injury. That is the only question before the judge here. You should not be misled by the statements that Mr. Donohue made, because that is the only claim, and that is a claim the judge did not sustain. This Court is being asked to consider that Mr. Martin should have worked for those two hours after work when his arm was burning. And you cannot do an end around an illegitimate workman's comp claim. He was entitled to everything under his doctor's orders. The agency itself claims that he could have been accommodated earlier in September, but the judge herself threw that out, stating it was the agency's mantra. That was, I believe, in footnote number 18. She says he could not be accommodated. This was his third operation within 10 months, and the doctor wanted him off for actually 120 days. It says that in the investigative memo. Mr. Ripper had, just 8 days before that surreptitiously taped conversation, told Mr. Martin to get a doctor's form permitting him to leave early for work, and it is memorialized, although I don't have it in my appendix, in Inspection Service Exhibit 14A, Bates No. 45. And that is what Mr. Ripper told Mr. Martin to do just 8 days before that criminal fraud sting operation, where Mr. Martin was not informed that he was being questioned about any material matter concerning a benefit or his workman's comp benefits. He is fully entitled to his benefits. This case does an end run based only on two investigative interviews, in the first of which, where Mr. Martin wasn't even notified it was an interview. I think you'll note that your red light is on, you've exceeded your time. Thank you. We'll take the case under review.